UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPARTECH CMD, LLC d/b/a SPARTECH
COLOR AND SPECIALTY COMPOUNDS

                    Plaintiff,           CASE NUMBER: 08-13234
                                         HONORABLE VICTORIA A. ROBERTS
v.

INTERNATIONAL AUTOMOTIVE
COMPONENTS GROUP NORTH AMERICA, INC.,

                    Defendant.
_____/

## ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO ENJOIN ARBITRATION, AND DENYING DEFENDANT'S MOTION TO DISMISS

**I.      INTRODUCTION**

From May to June 2008, Plaintiff Spartech CMD, L.L.C. and Defendant

International Automotive Components Group North America, Inc., entered into a series

of contracts for the sale of goods.  A dispute arose over pricing; Defendant referred it to

arbitration on July 16.  Plaintiff filed suit here on July 28 and requests injunctive relief.

The Court **DENIES** Plaintiff's Motion for Temporary Restraining Order and

Preliminary Injunction in part, **GRANTS** the motion in part, and **DENIES** Defendant's

Motion to Dismiss.

**II.     BACKGROUND**

The facts summarized are set forth in Plaintiff's Complaint (Doc. #1).  Plaintiff is a

Delaware limited liability company and a citizen of Missouri for diversity purposes.

Plaintiff operates a factory in Manitowoc, Wisconsin, where it manufactures various

chemical compounds.  Defendant is a Delaware corporation with its principal place of business in Dearborn, Michigan.  Defendant purchases Plaintiff's products for use at its facilities in various states.  At issue are five contracts identified by their purchase order numbers ("PO#"): PO# 251050, issued May 5, 2008; PO#s 133452, 193836 and 216910, all dated June 25, 2008; and PO# 243934, issued June 27, 2008.

With the exception of PO# 133452, for each contract, Plaintiff received a purchase order from Defendant.  These purchase orders contain the arbitration language at issue here.  Plaintiff responded by sending an Acknowledgment Form and a copy of its Terms and Conditions of Sale ("Plaintiff's Terms"); Paragraph 14 contains the following forum-selection clause:

> This agreement is a contract entered into in Pennsylvania and governed by the laws of the State of Pennsylvania.  If [Plaintiff-]Seller brings an action to enforce the terms of this agreement in any Pennsylvania or Federal court, [Defendant-]Buyer agrees to waive objections to personal jurisdiction and venue.

(Pl.'s Br. Supp. Mot. Ex. B. at ¶14.)

With respect to PO# 133452, Defendant entered it directly into Plaintiff's computer system; to complete the order, Defendant had to print Plaintiff's Acknowledgment Form, containing Plaintiff's Terms.  Plaintiff never received a purchase order from Defendant with arbitration language concerning PO# 133452.

A dispute arose over the pricing of the five contracts.  On July 16, 2008, Defendant initiated arbitration proceedings before the American Arbitration Association ("AAA") to resolve the issue.  Defendant justified seeking arbitration by pointing to a provision from its own purchase orders:

> This purchase order . . . incorporates by reference [Defendant's] Purchase

2

> Order Terms and Conditions which are available through links provided on [Defendant's] Web Site at WWW.IACGROUP.COM. . . . The Terms apply to all purchases by [Defendant] and its affiliates under any purchase order.

(Def.'s Br. Supp. Opp'n Ex. A.)  Paragraph 51 of Defendant's Purchase Order Terms and Conditions ("Defendant's Terms") contains this Arbitration Clause:

> All disputes arising under or in connection with any Order or any other document pertaining to any Order shall be finally settled by arbitration in Southfield, Michigan, before a single arbitrator appointed by the American Arbitration Association ("AAA") which arbitration shall be conducted under AAA's commercial arbitration rules then in effect at the time of the Order provided, however, that discovery shall be permitted in accordance with the United States Federal Rules of Civil Procedure.

(Compl. ¶ 30.)

On July 28, 2008, Plaintiff filed a Complaint for Declaratory Judgment that neither it nor any of its associates is legally or contractually obligated to submit disputes with Defendant to arbitration.  Plaintiff notified the AAA of its action and requested that proceedings be held in abeyance pending a ruling here.  In response, Defendant advised the AAA that it expects the proceedings to continue "unless and until" they are enjoined.  On August 8, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction to stay the arbitration proceeding (Doc. #10), and on October 2, Defendant filed its Motion to Dismiss the underlying Complaint (Doc. #17).

## III.   ANALYSIS

### A.   Plaintiff's Motion for Preliminary Injunction

Plaintiff asks the Court to issue both a temporary restraining order and a preliminary injunction.  A temporary restraining order is "a procedural remedy implemented on an ex parte basis when notice to the opposite party is impractical or

3

would generate additional harm to the applicant." *Anglers of the Au Sable v. United States Forest Serv.*, 402 F. Supp. 2d 826, 830 (E.D. Mich. 2005) (*citing* Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974)). Here, the arbitration proceedings are still in early stages, and Plaintiff does not suggest that a hearing is imminent; furthermore, Defendant received ample notice and was able to file a written response to Plaintiff's motion. Accordingly, the Court construes Plaintiff's motion purely as a request for preliminary injunction.

When deciding whether to grant a preliminary injunction, a district court must consider: (1) whether the plaintiff has a strong likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the relief; (3) whether granting the order will cause substantial harm to others; and (4) whether granting the order will serve the public interest. *Summit County Democratic Cent. & Executive Comm. v. Blackwell,* 388 F.3d 547, 550-51 (6th Cir. 2004); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *cert. denied*, 526 U.S. 1087 (1999). No single factor is dispositive; rather, the court must balance them and determine if they weigh in favor of an injunction. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997).

> [A] finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.

*Id.* at 399-400 (*quoting Gaston Drugs, Inc. v. Metro. Life Ins. Co.*, 823 F.2d 984, 988 n.2 (6th Cir. 1987) (internal quotations omitted)).

4

### 1.      Likelihood of Success on Merits

Plaintiff contends that it never received a copy of Defendant's Terms, and thus it is not bound by the Arbitration Clause.  Moreover, even if the Arbitration Clause applies, Plaintiff argues it cannot be reconciled with Paragraph 14 of Plaintiff's Terms, which requires that all disputes be resolved in court.  Defendant counters that Paragraph 14 applies only to suits filed by Plaintiff, not to claims filed by Defendant.  Thus, Defendant concludes, the parties' terms are not in conflict, and Plaintiff must agree to arbitration.

The Court begins by outlining the federal law of arbitration, before turning to whether this dispute is arbitrable.

### a.      The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "establishes a statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation."  *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir. 1984).  Under § 2 of the FAA,

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Furthermore, the FAA provides that if, in the course of a judicial proceeding, an issue arises that is referable to arbitration under a written agreement between the parties,

> the court . . ., upon being satisfied that the issue involved in such suit or proceeding is referable . . ., shall on application of one of the parties stay the trial of the action until such arbitration has been had . . ., providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  *See also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

5

(the FAA leaves district courts "no place for the exercise of discretion" in compelling arbitration of pendent arbitrable claims).

Courts generally agree that 9 U.S.C. § 3 applies not only to "the trial of the action," but to "pretrial proceedings [as well,] other than preliminary injunction proceedings intended to preserve the status quo." *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524, 528-29 (7th Cir. 1996) (*citing Corpman v. Prudential-Bache Securities, Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) (per curiam); *Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648 (11th Cir. 1988) (per curiam)).

Neither Plaintiff nor Defendant disputes that their written purchase orders are contracts concerning transactions involving interstate commerce. Therefore, if the Court finds the Arbitration Clause valid and the dispute arbitrable, the FAA will govern.

**b.    Determination of Arbitrability**

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (*quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Unless there is clear and unmistakable evidence that the parties intended to arbitrate arbitrability, i.e. to let an arbitrator decide whether they intended to arbitrate their disputes in the first place, the issue is for the courts to decide. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (alterations in original) (*quoting AT&T Techs.*, 475 U.S. at 649)); *see also Seawright v. Am. Gen. Fin. Servs.,*

6

*Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) ("While the courts must respect the liberal federal policy favoring arbitration agreements, . . . the underlying question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.") (internal quotes and citations omitted).

Here, there is no evidence the parties agreed to let an arbitrator decide if they intended to arbitrate their disputes. Therefore, judicial resolution is appropriate.

To determine if a dispute is arbitrable, a court must analyze: (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (*citing AT&T Techs.*, 475 U.S. at 649). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (footnote omitted)).

### c.     Valid Agreement to Arbitrate

### i.     Law Governing the Contract

In deciding whether two parties agreed to be bound by an arbitration agreement, courts look to applicable state law governing the formation of contracts. *First Options*, 514 U.S. at 944 (*citing Perry v. Thomas*, 482 U.S. 483, 492-93 n.9 (1987) ("state law . . . is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally")). Pursuant to the parties' stipulation on applicable law (Doc. #24), the Court applies Michigan law.

7

The Michigan legislature adopted section 2-207, the so-called "battle of the forms" provision of the Uniform Commercial Code ("U.C.C.").  It states:

> (1)      A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> 2)   The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:
>    (a) the offer expressly limits acceptance to the terms of the offer;
>    (b) they materially alter it; or
>    (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Mich. Comp. Laws ("M.C.L.") § 440.2207.  Plaintiff and Defendant are both merchants for purposes of § 440.2207.  *See* § 440.2104(1).

Neither party disputes that Defendant's PO#s 251050, 193836, 216910 and 243934 were individual offers to buy Plaintiff's products, and that Plaintiff acquiesced to each with a different Acknowledgment Form.  Thus, each exchange of forms represents an individual contract.  *See Majic Window Co. v. Milgard Windows*, 63 U.C.C. Rep. Serv. 2d (CBC) 679, 2007 U.S. Dist. LEXIS 53267, at *7-9 (E.D. Mich. July 24, 2007) (discussing the difference between single delivery and installment contracts).  Likewise, for PO# 133452, Defendant communicated its offer electronically to Plaintiff, and received Plaintiff's acceptance by printing its Acknowledgment Form.

### ii.    Incorporation of Defendant's Terms

The next issue is whether the Arbitration Clause in Defendant's Terms is integral to the parties' contracts, since it does not appear on the purchase orders.

8

Plaintiff asserts, without citing authority, that it cannot be bound by an arbitration provision contained in a set of terms and conditions that it never received.  However, "Michigan law permits a party to incorporate terms or documents from other writings." *Robert Bosch Corp. v. ASC, Inc.*, 195 Fed. Appx. 503, 505 (6th Cir. 2006) (unpublished) (*citing Forge v. Smith*, 458 Mich. 198, 207 (1998) ("Where one writing references another instrument for additional contract terms, the two writings should be read together.") (footnote omitted)).  Furthermore, failing to inquire about terms and conditions referenced in an agreement is no defense: "the parties are bound by those additional terms even if they have never seen them."  *Constr. Fasteners, Inc. v. Digital Equip. Co.*, No. 2:08-cv-11790; 1996 Mich. App. LEXIS 736, at *2 (Mich. Ct. App. Oct. 22, 1996) (unpublished) (*citing Ginsberg v. Myers*, 215 Mich. 148, 150-51 (1921)); *see also Robert Bosch*, 195 Fed. Appx. at 505 ("A party may not plead ignorance as an excuse if the contract is clear on its face that such terms were intended to be incorporated.") (*citing Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 92 (1991)).

Four purchase orders, PO#s 251050, 193836, 216910 and 243934, bear a statement explicitly incorporating Defendant's Terms by reference.  Defendant's intent to incorporate its Terms is clear on its face; thus, Defendant's Arbitration Clause is an integral part of these four contracts.

However, Defendant never sent a purchase order for PO# 133452.  This means that Plaintiff's Acknowledgment Form is the only writing for this transaction; Defendant's Arbitration Clause was not incorporated.  Furthermore, there is no suggestion that the Arbitration Clause should apply to PO# 133452 by virtue of the parties' course of dealing, or that resolution of disputes by arbitration is a usage of trade in the parties'

9

industry.  See M.C.L. § 440.1201(3) (defining an agreement as "the bargain of the

parties in fact as found in their language or by implication from other circumstances

including *course of dealing or usage of trade* or course of performance as provided in

this act") (emphasis added); *Atl. Textiles v. Avondale Inc. (In re Cotton Yarn Antitrust

Litig.)*, 505 F.3d 274, 280 (4th Cir. 2007) (holding that arbitration is a usage of trade in

the textile industry).

 Plaintiff is not bound to arbitrate claims arising under PO# 133452.

 The Court now examines whether the Arbitration Clause incorporated into four of

the five contracts is valid, or if it conflicts with the forum-selection clause contained in

Paragraph 14 of Plaintiff's Terms.

### iii. Validity of Arbitration Clause

 Plaintiff argues that its Paragraph 14 and Defendant's Arbitration Clause are in

direct conflict, a situation commonly known as a "battle of the forms."  According to

Plaintiff, these provisions cancel each other out, and the Court must look to Michigan

common law to determine the proper forum in which to adjudicate this dispute.

 In applying M.C.L. § 440.2207, Michigan courts distinguish between "additional"

terms and those that are altogether "different."  *See Am. Parts Co. v. Am. Arbitration

Ass'n*, 8 Mich. App. 156, 167 (1967) ("[B]etween merchants additional, *but not different*,

terms become part of the contract" subject to § 440.2207(2)) (emphasis added).  When

an offer and acceptance contain different or conflicting terms, Michigan courts apply the

majority "knock out rule:" the conflicting terms are purged from the agreement and the

resulting contract consists only of those provisions agreed upon by both parties, plus

any applicable U.C.C. gap fillers.  *Robert Bosch*, 195 Fed. Appx. at 507 (*citing*

10

*Challenge Mach. Co. v. Mattison Mach. Works*, 138 Mich. App. 15, 24-26 (1984)).  The issue for the Court, therefore, is to determine if Defendant's Arbitration Clause and the forum-selection clause in Plaintiff's Terms are sufficiently "different" to trigger the knock out rule, or if Paragraph 14 is merely an additional term to be handled according to M.C.L. § 440.2207(2).

The Supreme Court describes arbitration agreements as "in effect, a specialized kind of forum-selection clause." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 483 (1989); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  The two are not equals, however, because federal public policy strongly favors arbitration agreements.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 932 (6th Cir. 1998).  Furthermore, as a rule, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1971).  Thus, when faced with potentially conflicting forum-selection and arbitration clauses, a district court must "carefully scrutinize" the forum-selection clause, and "if doubts arise as to whether [a] dispute is arbitrable or not, such doubts must be resolved in favor of arbitrability." *Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987), *abrogated on other grounds*, *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988) (holding that signing a forum-selection clause did not waive a party's contractual right to seek arbitration, where the clause did not mention arbitration).

The Sixth Circuit has yet to address the relationship between forum-selection and

11

arbitration clauses.  However, several other circuits hold that choice-of-forum clauses

are not inconsistent with, but rather complementary to arbitration provisions.  In *Bank*

*Julius Baer & Co. v. Waxfield Ltd.*, the parties signed an agreement to arbitrate their

disputes, followed a month later by another agreement with a forum-selection clause.

424 F.3d 278, 282 (2d Cir. 2005).  When the plaintiff tried to submit a dispute to

arbitration, the defendant objected, arguing that the forum-selection clause, by

"admitting the possibility of litigation in court," operated as a waiver of the arbitration

agreement.  *Id.* at 283-84.  The Second Circuit disagreed, stating:

> Under our cases, if there is a reading of the various agreements that
> permits the Arbitration Clause to remain in effect, we must choose it: "The
> existence of a broad agreement to arbitrate creates a presumption of
> arbitrability which is only overcome if it may be said with positive
> assurance that the arbitration clause is not susceptible of an interpretation
> that covers the asserted dispute."  Moreover, we "cannot nullify an
> arbitration clause unless the forum selection clause specifically precludes
> arbitration."

*Id.* at 284 (citations omitted).  The court noted that the forum-selection clause did not

mention arbitration, and thus concluded that it could not be construed to "specifically

preclude" arbitration.  *Id.*  Instead, the court held that the forum-selection clause

> may be read, consistent with the Arbitration Agreement, in such a way that
> the [parties] are required to arbitrate their disputes, but that to the extent
> the [plaintiff] files a suit in court in New York -- for example, to enforce an
> arbitral award, or to challenge the validity or application of the arbitration
> agreement -- [the defendant] will not challenge either jurisdiction or venue.

*Id.* at 285.

    *Bank Julius Baer* relies heavily on the Third Circuit case of *Patten Securities*, 819

F.2d at 400.  There, the plaintiff argued that the defendant waived its right to arbitration

by signing an agreement designating New Jersey courts as the proper forum for

lawsuits.  *Id.* at 403.  The Third Circuit rejected this argument, stating:

> Conspic[u]ously absent from the forum selection clause . . . is any
> reference to arbitration whatsoever.  When [the plaintiff] drafted the forum
> selection clause it could have made a reference to arbitration in the clause
> if it sought to have [the defendant waive] arbitration . . .
> . . .
> Furthermore there is nothing inconsistent between the arbitration
> obligation and the instant forum selection clause.  Both can be given
> effect, for arbitration awards are not self enforceable.  They may only be
> enforced by subsequent judicial action.  Thus, even if arbitration is
> completed, the forum selection clause would appear to dictate the location
> of any action to enforce the award.

*Id.* at 407 (internal footnote omitted).  *See also Pers. Sec. & Safety Sys., Inc. v.*

*Motorola Inc.*, 297 F.3d 388, 396 n.11 (5th Cir. 2002) ("a forum selection clause cannot

nullify an arbitration clause unless the forum selection clause specifically precludes

arbitration.").

Plaintiff says these cases are not binding on this Court, and that Sixth Circuit

precedent dictates a different result.  It argues that under *Robert Bosch Corp. v. ASC,*

*Inc.*, Paragraph 14 gave Defendant notice of its opposition to arbitration.  195 Fed.

Appx. at 503.  In *Robert Bosch*, the plaintiff's offer contained an arbitration clause, and

the defendant's acceptance included a provision reserving all "rights and remedies."  *Id.*

at 506-07.  The defendant argued that this "rights and remedies" provision conflicted

with the arbitration clause because it was meant to reserve the defendant's right to a

jury trial.  *Id.* at 507.  The Sixth Circuit found that, by its plain meaning, the term "rights"

represents the parties' privileges under the contract, while "remedies" refers to redress

for breach of those rights.  *Id.* (*citing Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*,

210 F.3d 262, 266 (4th Cir. 2000)).  The court held these terms could not be read to

preserve the defendant's right to judicial fora.  *Id.*  It also clarified the conditions

necessary to trigger the knock out rule:

> Th[e] rule only protects parties against being bound by terms to which they
> had *specifically objected*.  . . .  Thus, the conflicting term must be *specific
> enough to give notice* of a desire for a different term, . . . which [the
> defendant's] broad reservation of rights fails to do.

*Id.* (*citing Challenge Mach.*, 138 Mich. App. at 25) (emphasis added).  *See also* M.C.L. §

440.2207(2)(c) (additional terms become part of the contract unless "notification of

objection . . . is given within a reasonable time"); *Sealed Power Techs. v. Torrington

Co.*, No. 203048, 1998 Mich. App. LEXIS 1941, at *8-9 (Mich. Ct. App. July 17, 1998)

(unpublished) (holding that a clause stating "[n]o other terms are acceptable unless

agreed upon by both parties," is sufficient to invoke the knock out rule; there is no

requirement that directly conflicting provisions exist).

 Plaintiff argues that Paragraph 14 "gives notice" of its opposition to arbitration,

and, therefore, conflicts directly with Defendant's Arbitration Clause.  The Court

disagrees.  The terms of a contract must be construed according to their objective plain

meaning.  *Robert Bosch*, 195 Fed. Appx. at 507 (*citing Burkhardt v. Bailey*, 260 Mich.

App. 636, 656-57 (2004)).  Objectively construed, Paragraph 14 designates

Pennsylvania as Plaintiff's choice of judicial forum; it does not require conflicts to be

exclusively resolved in Pennsylvania courts, nor does it explicitly reserve Plaintiff's right

to judicial resolution of disputes.  Furthermore, by its plain terms, this provision applies

only to actions *initiated by Plaintiff*  to "enforce the terms of the agreement in . . . court."

There is no requirement that disputes be settled in litigation; Paragraph 14 only says

that if Plaintiff files suit in a Pennsylvania state or federal court, Defendant may not

contest personal jurisdiction or venue.

This reading comports with *Robert Bosch*'s requirement that a conflicting term be "specific enough to give notice of a desire for a different term." 195 Fed. Appx. at 507. Paragraph 14 clearly gives notice that, if Plaintiff files suit in Pennsylvania, Defendant must consent to the jurisdiction of Pennsylvania courts; however, it is not specific enough to advise Defendant of Plaintiff's refusal to arbitrate any and all claims. *See id.* ("the unilateral subjective intent of one party cannot control the terms of a contract.") (*quoting Burkhardt*, 260 Mich. App. at 656) (internal alterations omitted).

Finally, if Plaintiff had meant to protect its right to a judicial forum, it could have said so explicitly. As written, Paragraph 14 reflects only an intention to reserve Plaintiff's right to sue in Pennsylvania courts. *See id.* ("[The plaintiff's] failure to specifically reserve the right to a judicial forum is evidence of a lack of intent to do so as it specifically reserved Michigan as the forum state elsewhere in its terms.") (*citing Bianchi v. Auto. Club of Mich.*, 437 Mich. 65, 66 (1991)).

Although it has yet to consider this exact fact pattern, the Sixth Circuit would, in all likelihood, rule that the parties' terms are neither different nor incompatible, and that the knock out rule does not apply. Therefore, the Court finds the Arbitration Clause included in Defendant's Terms valid and binding upon the parties.

### d.    Scope of Arbitration Clause

For a specific dispute to be arbitrable, it must fall "within the substantive scope" of the agreement to arbitrate. *Javitch*, 315 F.3d at 624.

The parties' dispute is clearly within the scope of arbitration. The Arbitration Clause refers to "[a]ll disputes arising under or in connection with any Order." While

15

courts disagree on the breadth of the term "arising under" when used in arbitration clauses, it certainly includes matters relating to the interpretation and performance of the underlying contract. *See Goldberg v. Focus Affiliates, Inc.*, 152 F. Supp. 2d 978, 980-82 (N.D. Ill. 2001) (discussing cases). Since this dispute concerns the price of goods sold under the contract, it is clearly within the ambit of the Arbitration Clause.

The Court holds that the parties' dispute falls within the scope of an enforceable Arbitration Clause. Thus, Plaintiff's likelihood of success on the merits is very low.

### 2.    Irreparable Harm

Plaintiff says it will suffer immediate irreparable harm if arbitration is not enjoined, because it will be forced to either participate in a proceeding to which it did not consent, or abstain and risk a default judgment against it.

Plaintiff relies on *Chicago School Reform Board of Trustees v. Diversified Pharmaceutical Services, Inc.*, in which the district court stated:

> The Supreme Court has made it abundantly clear that a party cannot be forced to arbitrate issues that it did not agree to arbitrate. Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes. The court therefore finds that sending this case to arbitration would cause the Board irreparable harm.

40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) (*citing AT&T Techs.*, 475 U.S. at 648).

Plaintiff's reliance on *Chicago School Reform* is misplaced. There, the plaintiff board of trustees sought to enjoin arbitration on grounds that (1) it had not signed the contract at issue, and therefore could not be bound by its arbitration clause, and (2) the parties' dispute was not part of the issues they had agreed to arbitrate. *Id.* at 989. The district court found the arbitration clause valid, but agreed with the plaintiff that it did not

16

cover this particular dispute.  *Id.* at 995.

Here, as discussed in the previous section, the parties' dispute falls within the scope of arbitration.  Furthermore, Plaintiff made clear its objections; participating in arbitration will not amount to a waiver of its right to contest validity at a later stage.  *See Wiepking v. Prudential-Bache Sec., Inc.*, 940 F.2d 996, 999 (6th Cir. 1991) ("This is not a situation where plaintiffs consented to arbitration and are now seeking a second bite at the apple.").  Even if a court eventually rules the clause unenforceable, the fact that Plaintiff will have had to defend itself in arbitration – and perhaps sustain an adverse ruling – does not amount to irreparable harm.  *See id.* (being subjected to the expense of litigating arbitral proceedings that are ultimately unenforceable is "unfortunate," but does not constitute irreparable harm) (*quoting Zosky v. Boyer*, 856 F.2d 554, 561 (3d Cir. 1988), *cert. denied*, 488 U.S. 1042 (1989)).

Denying the requested injunction will not force Plaintiff to arbitrate an issue it did not agree to arbitrate, and will not cause Plaintiff irreparable harm.

### 3.      Harm to Others or Public Interest

When weighing the potential harm to the public interest of enjoining arbitration, the Court must bear in mind the United States' "national policy favoring arbitration." *Buckeye Check Cashing*, 546 U.S. at 443.  As the Supreme Court reminds us, Congress originally passed the FAA "[t]o overcome judicial resistance to arbitration."  *Id.*

Plaintiff argues that enjoining arbitration will cause "little to no harm" to Defendant and serves the public interest by preserving the enforceability of contracts.  However, the public also has an interest in seeing valid contracts enforced.  *See Zimmer, Inc. v. Albring*, 156 Lab. Cas. (CCH) P60,635, No. 08-12484, 2008 U.S. Dist. LEXIS 50089, at

17

*27 (E.D. Mich. June 27, 2008); *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 849 (E.D. Mich. 1994).  Furthermore, assuming that Defendant will not suffer any significant harm, the fact remains that the FAA "places arbitration agreements on equal footing with all other contracts."  *Buckeye Check Cashing*, 546 U.S. at 443.  Since the Court finds the Arbitration Clause valid and binding, it must enforce the agreement as it would any other contract.  *See Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 356 (1931) ("The general rule is that . . . agreements voluntarily and fairly made shall be held valid and enforced in the courts.")

### 4.    Weighing the Equities

On balance, the equities tilt against enjoining arbitration concerning PO#s 251050, 193836, 216910 and 243934.  Plaintiff's likelihood of prevailing on the merits is remote, it faces neither immediate nor irreparable harm, and public policy favors upholding arbitration agreements and contracts as written.  Therefore, the parties must proceed to arbitration on these claims, as per 9 U.S.C. § 2.

With regard to PO# 133452, however, the balance tilts in the opposite direction. Since the Arbitration Clause was never part of that contract, Plaintiff's likelihood of success on the merits is high, and it may suffer irreparable harm if forced to arbitrate a claim it never agreed to arbitrate.  It is also in the public's interest that valid contracts be enforced.  Thus, Plaintiff will not be compelled to arbitrate PO# 133452.

### B.    Defendant's Motion to Dismiss

Defendant requests the Court to dismiss Plaintiff's action for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

Under the FAA, if a court encounters a claim or issue that is arbitrable, it must stay the proceedings and refer the parties to arbitration. 9 U.S.C. § 3. The FAA gives courts no discretion to address arbitrable issues raised in the complaint. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967) ("Section 3 requires a federal court . . . to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement."); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (same).

The Sixth Circuit permits district courts to dismiss, rather than simply stay, cases in which all claims are to be referred to arbitration. *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 U.S. App. LEXIS 26600, at *10 (6th Cir. Oct. 19, 1999) (unpublished) (*citing Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *accord Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (holding that if a valid arbitration clause precludes judicial review, a district court may dismiss a complaint for failure to state a claim); *but see Gratzer v. Yellow Corp.*, 316 F. Supp. 2d 1099, 1106-07 (D. Kan. 2004) (refusing to dismiss on grounds that 9 U.S.C. § 3 "contemplates continuing supervision by the district court.") (*citing The Anaconda v. Am. Sugar Ref. Co.*, 322 U.S. 42, 44 (1944); *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538-39 (10th Cir. 1987)).

Because the Court determines that PO# 133452 is not subject to arbitration, the entire case is not subject to dismissal under *Hensel v. Cargill.* Therefore, the proper course is to stay proceedings regarding PO#s 251050, 193836, 216910 and 243934 until they are resolved in arbitration. *See Fazio*, 340 F.3d at 392.

### C. Proceeding with PO# 133452

Concerning the remaining contract, the Court may either allow litigation to

19

continue, or stay the case pending conclusion of arbitration proceedings.

### 1.    Court's Discretion to Stay Judicial Proceedings

The FAA unequivocally mandates staying judicial proceedings on arbitrable

issues, but does not instruct on how to proceed when nonarbitrable matters remain.

*Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007).

According to the Supreme Court, the FAA allows nonarbitrable issues or claims to be

litigated concurrently with arbitration proceedings.

> The preeminent concern of Congress in passing the [FAA] was to enforce
> private agreements into which parties had entered, and that concern
> requires that we rigorously enforce agreements to arbitrate, even if the
> result is 'piecemeal' litigation, at least absent a countervailing policy
> manifested in another federal statute.

*Dean Witter*, 470 U.S. at 221.  In *Moses H. Cone Mem'l Hosp.*, the Supreme Court also

held that, when an arbitration agreement exists between some, but not all parties to a

case, litigation between arbitrating parties must be stayed, but proceedings against

parties not subject to the agreement may continue.  460 U.S. at 20.  However, the Court

added,

> In some cases, . . . it may be advisable to stay litigation among the
> nonarbitrating parties pending the outcome of the arbitration.  That
> decision is one left to the district court . . . as a matter of its discretion to
> control its docket.

*Id.* at 20 n.23.

Building on *Dean Witter* and *Moses H. Cone Mem'l Hosp.*, most circuits hold that

"[w]hen confronted with litigants advancing both arbitrable and nonarbitrable claims, . . .

courts have discretion to stay nonarbitrable claims."  *Klay v. Pacificare Health Sys., Inc.*,

389 F.3d 1191, 1204 (11th Cir. 2004).  *Accord Mendez v. P.R. Int'l Cos., Inc.*, No.

07-4053, 2009 U.S. App. LEXIS 1317, at *9 (3d Cir. Jan. 26, 2009) (unpublished);

*Volkswagen of Am.*, 474 F.3d at 971-73; *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins.*

*Co.*, 242 F.3d 777, 782 (8th Cir. 2001); *Am. Recovery Corp. v. Computerized Thermal*

*Imaging*, 96 F.3d 88, 97 (4th Cir. 1996); *McCarthy v. Azure*, 22 F.3d 351, 361 n.15 (1st

Cir. 1994); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987).

The Sixth Circuit has not expressed an opinion on this issue, but precedent

suggests it would likely join other circuits in holding that a district court may, in its

discretion, stay litigation concerning nonarbitrable claims pending the outcome of

arbitration proceedings.  In any case, other district courts in this circuit have assumed

as much.  *See, e.g., Yamasaki Korea Architects, Inc. v. Yamasaki Assocs.*, No.

08-10342, 2008 U.S. Dist. LEXIS 95261, at *12 (E.D. Mich. Nov. 17, 2008)

(unpublished); *RMF Nooter, Inc. v. Gleeson Constrs., LLC*, No.06-cv-298, 2006 U.S.

Dist. LEXIS 82466, at *21-22 (W.D. Mich. Nov. 13, 2006) (unpublished) (*citing Moses H.*

*Cone Mem'l Hosp.*, 460 U.S. at 20 n.23).

## 2.    Appropriateness of Stay

The district courts' discretion to stay entire cases, including nonarbitrable claims,

should not be exercised lightly.   "[C]ourts generally refuse to stay proceedings of

nonarbitrable claims when it is feasible to proceed with the litigation."  *Klay*, 389 F.3d at

1204 (*citing Dean Witter*, 470 U.S. at 225 (White, J., concurring) (noting that the "heavy

presumption should be that the arbitration and the lawsuit will each proceed in its

normal course")).

There is no uniform test to decide if a stay is appropriate.  Typically, the question

occurs in two types of cases.  In the first scenario, some, but not all of the litigants, are

parties to arbitration agreements, and a motion is filed to either stay third-party litigation, or to continue concurrently with arbitration proceedings.  *See CTF Hotel Holdings v. Marriott Int'l*, 381 F.3d 131, 139-140 (3d Cir. 2004);  *Hill v. G.E. Power Sys.*, 282 F.3d 343, 347 (5th Cir. 2002); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997); *IDS Life Ins.*, 103 F.3d at 530; *Int'l Bhd. of Elec. Workers, Local Union No. 2020 v. AT&T Network Sys.*, 879 F.2d 864 (6th Cir. 1989); *Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980).

The second option is the one the Court faces here: all litigants are parties to an arbitration agreement, but not all claims or issues between them are arbitrable.  To determine whether to stay the remaining claims, courts have devised different, but overlapping formulas.  The Second, Ninth and Eleventh Circuits apply a narrow rule in which a stay is appropriate *only* when "arbitrable claims predominate or [when] the outcome of the nonarbitrable claims will depend upon the arbitrator's decision."  *Klay*, 389 F.3d at 1204.  *Accord United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 Fed. Appx. 412, 415 (9th Cir. 2002); *Genesco*, 815 F.2d at 856.

By contrast, the Seventh and Eighth Circuits leave district courts discretion to proceed with nonarbitrable issues, *except* when doing so

> risks "inconsistent rulings" because the pending arbitration is "likely to resolve issues material to [the] lawsuit."  The factors that bear on this inquiry include "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays."  When these factors weigh in favor of staying the entire action pending arbitration, the district court may abuse its discretion in allowing the nonarbitrable issues to proceed absent a stay.

*Volkswagen of Am.*, 474 F.3d at 972 (*quoting AgGrow Oils*, 242 F.3d at 783) (alteration in original).  Compared to the *Klay* rule, this approach is more flexible.  The Seventh

22

Circuit recognizes that a district court may "prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court." *Id.* (*citing Hikers Indus. v. William Stuart Indus.*, 640 F. Supp. 175, 178 (S.D.N.Y. 1986)).

Nevertheless, both approaches share a general concern for avoiding concurrent proceedings in cases where a decision in one forum could affect the resolution of claims in the other. *See Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990), *abrogated on other grounds, IDS Life Ins. Co.*, 103 F.3d at 530 (reversing denial of stay where nonarbitrable issues were "completely dependent upon" arbitrable issues, and continued litigation could impair the resolution of arbitrable issues); *Klay*, 389 F.3d at 1204 (affirming denial of stay where doing so "would not permit a decision in either proceeding to have preclusive effect in the other.").

PO# 133452 is distinct from the other contracts, which require disputes to be submitted to arbitration. Furthermore, even if the same claims are raised regarding all transactions, those relating to PO# 133452 remain completely independent. "In other words, they are not interdependent to the extent that liability under one is conditional upon liability under another." *Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, 563 F. Supp. 2d 325, 332 (D.R.I. 2008).

Therefore, staying judicial proceedings on PO# 133452 is not obligatory under either the *Klay* or *Volkswagen of Am.* approach. *See Narragansett Elec.*, 563 F. Supp. 2d at 332 (declining to stay judicial proceedings); *Yamasaki Korea Architects*, 2008 U.S. Dist. LEXIS 95261, at *12 (declining to stay nonarbitrable claims, because they were "based on separate and distinct [architectural] projects and do not require a resolution of

23

the arbitrable claims before they can proceed."); *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 998 (D. Minn. 1999) (staying only one of several claims, because its resolution could depend on the results of arbitration).

The Court holds that, unless the parties agree otherwise, litigation will proceed on PO# 133452. The national policy favoring arbitration is balanced by the public interest in enforcing valid contracts as written, as well as the basic principle that one cannot be forced to arbitrate a matter which one did not agree in advance to arbitrate. These competing interests justify concurrent proceedings in this case, even if doing so may result in some duplication. *See Dean Witter*, 470 U.S. at 221 (holding that, absent a countervailing federal policy, courts must "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation").

## IV.   CONCLUSION

The Court **DENIES** Defendant's Motion to Dismiss, **DENIES** Plaintiff's Motion for Preliminary Injunction as to PO#s 251050, 193836, 216910 and 243934, and **STAYS** the litigation of claims arising under these contracts pending arbitration.

In addition, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction as to PO# 133452, and gives the parties the option to: (1) stay judicial proceedings; (2) continue litigation; or (3) join this contract in arbitration with the others. If the parties do not enter a stipulation by March 6, 2009, litigation will proceed on PO# 133452.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 23, 2009

The undersigned certifies that a copy
of this document was served on the attorneys
of record by electronic means or U.S. Mail on
February 23, 2009.

s/Carol A. Pinegar
Deputy Clerk